Stephen A. Talani. Mr. Lucas John Walker. You may proceed. May it please the court, counsel. Good morning, your honors. My name is Lucas Walker with the State Appellate Defender's Office and I represent Mr. Taliani in this appeal. Your honors, we argue today that this court should reverse the lower courts and find that Mr. Taliani has presented a colorable claim of actual innocence based on the newly discovered retroactive affirmative defense of involuntary intoxication due to the unwarranted adverse side effects of prescription medications. Your honors, the main contention in this case revolves around whether the evidence can be considered newly discovered and whether it could change the results at trial. The state doesn't contest that the evidence is material and not cumulative. So as for newly discovered evidence, obviously newly discovered evidence is generally defined as evidence not known at trial that could not be discovered sooner through due diligence. In this situation, your honors, we acknowledge it was known at the time of trial that Mr. Taliani was taking the two prescribed psychotropic medications, Deseril and Buspar, at the time of the offense. However, we argue this should still be treated as newly discovered because as Mr. Taliani claims in his petition, which at this stage that claim is taken as true unless positively rebutted by the syndrome was not known to be a potential side effect of the combined use of these drugs at the time of the offense. So therefore, this isn't a matter of a lack of due diligence. It's not a matter of dragging one's feet or simple delay. The claim was simply factually unavailable. All that was known is that he was taking the psychotropic medications, but without the critical aspect of understanding that those medications could actually result in a situation when combined to provide some sort of situation where he could be simply wasn't relevant at the time. Now, we want to also argue, because the state argues that actually it was known. We argue it was not. We'll put forth that briefly here. Simply that his claim, first of all, is taken as true. It's not positively rebutted. It's actually supported by the record. If you look at the PDR from 1993 that he attached to the record, it explains that Deseril, the way it actually, the mechanism by which it functioned in humans wasn't fully described. It describes it as not being tested with many psychotropic medications. It does note one test with Deseril at the time, but it says the only side effect noted was elevated liver enzymes, and that couldn't be replicated. Now, the state says, well, post-conviction counsel in the 2014 amended successive post-conviction counsel referenced serotonin syndrome as part of an unrelated claim. Therefore, it was known at the time of trial because counsel implied that maybe that would be the case. Your honors, we argue that shouldn't persuade this court. That's an unsupported assertion by prior post-conviction counsel. This court is not required to defer to that, especially where the fact is counsel said that in that argument in the amended 2014 PC said that, well, maybe perhaps this will be presented at a hearing on a fitness hearing at trial level if he had a fitness hearing. Although that's not explicitly said, the implication may be that. But what trial post-conviction counsel says is that the evidence that would be presented is Dr. Brady's report, Dr. Chapman's report, Quad City Counseling report, and all that's attached to the petition. It doesn't mention serotonin syndrome. So we argue it should be taken as true and that it is supported, not positively rebutted by the record. But if this court were to disagree, which it should not, we argue, but if it does, we argue even if it was Mr. Taliani's claim. Because at the time of trial, case law was commonly understood to preclude this type of claim. We can look to some case law prior to Taliani's case. In 1987, People v. Garrier, second district case, although in that case the defendant understood the nature of the substance, it was explicitly stated that lawfully prescribed medications obviously fall outside the requirement of trick, artifice, and force. Because at the time of trial, in order to show involuntary intoxication, the defendant had to prove that the intoxication was a result of some outside influence, such as trick, artifice, and force, and case law had said, well, lawfully prescribed medicines fall outside of that. After Garrier, this court and People v. Rogers came out and said, we agree with the appellate courts who have said the General Assembly requires a trick, artifice, and force showing to prove intoxication to be involuntary. It wasn't until 2006 in People v. Harry when this court revisited this issue and said, well, you know, the trick, artifice, and force requirement is too narrow of a restriction. And in doing that, this court overruled a slew of cases, including Garrier, including Rogers. And it wasn't until 2008 in a case that presents a situation very similar to this one, in Alberts in 2008, fourth district, where this was determined to be a new rule that's retroactive, Alberts actually presented a similar situation where, in that case, the petitioner at trial, it was on record that he was using psychotropic medications prescribed. But the claim wasn't raised, because, well, obviously, trick, artifice, and force was required. But in Alberts... Counsel, may I ask, is any new defense newly discovered evidence? We would argue, Your Honor, that it would have to be a proper vehicle. So what that means is that not merely any defense. This is an actual innocence claim based on the affirmative defense of involuntary intoxication, which this court in Harry noted was exculpatory. This provides new exculpatory evidence resulting in an affirmative defense. This is not a mere defense. It's much like self-defense is an affirmative defense that is routinely used to establish actual innocence. So we would argue not every defense, no, but if it's an affirmative defense that results in no criminal responsibility for the act, and is exculpatory, then it should be treated as a vehicle for actual innocence. And this case, as we were about to explain in Alberts, explained that this was a newly discovered retroactive affirmative defense by the fact that in Harry, this court announced a new rule when it said that this was no longer a restriction, trick, artifice, and force, because in doing that, it was not dictated by existing precedent. In fact, it overruled a slew of cases, noting that those cases were commonly understood to preclude this type of claim. It was called for some of the Can I stop you there, counsel? I'm sorry. It's kind of tricky when you're where you are and where I am and where I am. To follow up on Justice Garment's question, you're not arguing newly discovered evidence. Your brief over and over again refers to newly discovered retroactive claim. So there are a lot of words in there, a lot of powerful words in there. And we can talk about newly discovered since Harry was decided in, what, 04, 06? And then there was a 2014 P.C. file. But what I want to talk about at this point is to ask you some questions about why this rule, this Harry case, is retroactive. You cite an appellate court case to support that argument, but I'm going to ask you to explore that a little bit. Certainly not every case that a court decides has retroactive effect. The general rule is it doesn't. The general rule is always perspective only. Very narrow exceptions to that rule. This is a case in Harry where there was a statutory interpretation going on about how to interpret the statute here. Why would the statutory interpretation in Harry be retroactive so that a conviction that was settled in, whatever it is, in 86, 94, have a collateral attack at this point? Why is it retroactive? Sure. Well, as Albert's explained, first of all, it was determined to be a new rule because it wasn't dictated by existing precedent. The reason for it to be retroactive is because what that did is have the effect of broadening the scope of activity that was covered by this affirmative defense and therefore necessarily narrowed the scope of activity rendered criminal by substance of criminal statute, which therefore automatically gives rise to grave doubts of accuracy of convictions and becomes retroactive. Is there a constitutional part of this? To the extent that we argue this is actually part of the newly discovered evidence rule, in this case, of course, is governed by the... I mean in terms of retroactivity. In terms of retroactivity. Is there a constitutional dimension to the decision in the Harry case of statutory interpretation that would therefore somehow implicate retroactive application and collateral attack? Constitutional dimension would ultimately, I guess, fall under just... I'm not exactly sure if there's an ultimate constitutional dimension to the retroactivity other than, of course, I keep coming back to the newly discovered rule, but it is retroactive because, of course, it does... It necessarily gives rise to grave accuracy, gives rise to grave doubts of accuracy of convictions, so therefore it ultimately goes to innocent people potentially sitting in prison, which of course stems... And then, of course, that comes down to the actual innocence claim provision, which stems from the due process clause of the Illinois Constitution here in the state. So I would argue, I mean, certainly due process clause can come into effect here, but I do argue... I would argue that it clearly is retroactive based on case law where it's established that once this type of statute is expanded, expands the type of activity covered by this affirmative defense that necessarily narrows activity rendered criminal by substantive criminal statute, and that does make it retroactive. And so we argue it should apply. Now, Alberts, of course, decided that as well. And we want to point out one thing about Alberts. Excuse me. Well, counsel, if I could just follow up on that question in a little bit different vein. If it's not newly discovered evidence, but it's a legal defense that has now become available based upon Illinois Supreme Court precedent, then it's a legal defense. And as we know, the United States Supreme Court in Sawyer v. Whitley, and followed up in People v. Quickle, the third district of our court, has said that a claim of legal rather than factual innocence will not support an actual innocence claim. So is this a claim of legal innocence or a claim of factual innocence? We argue, Your Honors, that this is factual innocence. It certainly is not legal innocence. Quickle gave a great description of what legal innocence is. And their example was that in that situation, they said, well, if someone's found guilty of intentional, you know, knowing and felony murder, and the jury is given a general verdict form rather than separate verdict forms, that can result in acquittals. That's legal innocence. Here, there is a new exculpatory evidence being presented. And as we pointed out, the self-defense claim is commonly used as a vehicle for actual innocence. People v. Montes, which is a second district case we cite in our brief for its support of Alberts, was a post-conviction claim of actual innocence riding upon the affirmative defense of entrapment. And so we would argue this does present exculpatory evidence. And so, therefore, we would argue it's certainly not just purely legal innocence. It's certainly not comparable to the situation where there's no new exculpatory evidence presented and there's just simply an acquittal based on a technical error. So we would argue it certainly would be a proper vehicle for actual innocence. We did want to point out in Alberts that the Alberts court did find that the fact that it was retroactive in that case, despite it being known that he was using psychotropic medications at the time of trial, that that was sufficient to remand for a third stage evidentiary hearing. Mr. Taliani is only requesting to file and move to second stage proceedings. Now, we should probably get to the point here where we acknowledge, of course, in the 2014 amended successive post-conviction petition, this claim could have been raised. We can't really argue that it couldn't have because it's just a matter of record. You can see in the petition that serotonin syndrome is now mentioned. Obviously, at that point, Harry and Alberts had been decided. But we maintain this evidence should be treated as newly discovered because it was through no fault of Mr. Taliani's own that it wasn't raised. It was post-conviction counsel's decision. We can look to a first district case, 2016 case People v. Warren, for some persuasive argument on this. In that case, the petitioner filed a post-conviction petition through counsel, actual innocence claim, but certain affidavits were not attached to the petition. So it was a pro se, arguing actual innocence again, but this time attaching the affidavits. So it was not technically newly discovered. But the Warren court treated it as newly discovered because to do otherwise would undermine the purpose of the actual innocence claim exception in the first place, which is to prevent fundamental miscarriages of justice, not to create them. And so Warren also made a great point. Before I get to that, actually, I just want to make sure we're clear. This does compare to Warren. In this situation, post-conviction counsel filed the amended 2014 post-conviction petition. Taliani claims in his petition that upon learning of Harry and Alberts, he requested that this claim be raised. That is not rebutted by the record. In fact, we argue it's supported, where all of a sudden serotonin syndrome makes an appearance in this amended successive PC in 2014, and there's no reason it could not have been raised. Obviously, in Warren, it said most significantly, there's no reason why it could not have been raised. And to not raise it puts the situation we're in now, where he's arguing that this evidence should still be treated as newly discovered, which we hope is successful. We hope it is. It should be, in our estimation. But it puts them in this position, not necessarily so, where they could have just raised the claim. There's no, and this is not a situation where we're wondering if certain witnesses could be found or anything like that. This is a matter of being, it's on paper. Harry and Alberts were decided. We know that serotonin syndrome was known about by PC counsel. He included it in an unrelated claim. And so there's no reason it should not have been raised in it. And it was through no fault of Mr. Taliani's that it wasn't. Counsel, was Alberts based somewhat on a faulty premise? Because Alberts said that Harry broadened the scope of the involuntary intoxication beyond the plain language of the statute. But in Harry, this court specifically said that the condition alleged in that case as being involuntarily produced was within the plain meaning of the statute. So, so which is correct? Is it within the plain meaning of the statute or was the plain meaning of the statute somehow expanded? Well, we would argue that it was expanded because even this court acknowledged as much. When it overruled a slew of cases, there's no reason to overrule cases if there wasn't any difference in the interpretation at that point. And in overruling those cases, this court explicitly stated that those cases could be understood to have precluded this claim. If they clearly could not have excluded the claim, there was no reason to overrule them. So we would argue that it did expand it, but we would also point out, and this is sort of just persuasive argument, but there's a case discussed in Alberts, Boosley versus United States Supreme Court case, United States Supreme Court case. And in that situation, in that case rather, the petitioner pled guilty to drug trafficking with a firearm at the time when the use provision of that statute was interpreted to mean merely carrying the firearm during the offense. In Bailey, the United States Supreme Court interpreted that use provision to be, well, actually, the Congress always intended that to mean active employment of the firearm during the offense, not just mere possession. So the defendant filed a habeas and argued, well, that's a new interpretation. I need to be able to withdraw my plea. It's not knowing, intelligent. It would have been frivolous to have raised it previously because the interpretation was different. Well, the United States Supreme Court found that it was procedurally defaulted and then said, well, you can still maybe show cause and prejudice or actual innocence. The Supreme Court said he couldn't show cause because there had been cases prior to that case, prior to that habeas petitioner's plea, discussing the use provision and how it should be interpreted differently. But the Supreme Court of the United States did remand that for an evidentiary hearing on actual innocence. Our point being here that in that, you know, it did brought, although there was interpretation where that was always meant to be the case initially, where it was supposed to mean just merely possession, but that was then interpreted, well, actually Congress always meant for it to mean active employment. And in that situation, actual innocence was not barred. It was, it was remanded for an evidentiary hearing despite not being able to show cause. And that's because we would point out and underline that actual innocence claims are special and they should be treated as such. And so it shouldn't be read as being barred. And we would argue to answer your question, which we, I think we have already, but just to be clear, no, we would argue that it did expand it as, as noted by the old ruling of the cases and it's notated and it's all in this court's own statement that those cases were read and could be read to preclude this type of claim. Now, so I guess that would bring us, unless this court has any more questions about the 2014 situation. Oh, I will point out that Warren made a great point about that. This isn't letting any petitioner off the hook. In fact, what it does is it still requires every petitioner to prove the elements of an actual innocence claim, of course, which is that it's material evidence, that it's not cumulative, that it could change the results at trial. And so this isn't letting anyone off the hook. And, and of course here, the state does not contest that the evidence is material and that it was not cumulative, but it does argue that it wouldn't change the results of trial. And we can get to that element now. We should probably refresh ourselves on the standard. Robinson in this court explained total exoneration, total vindication is not required here at this stage. It's his motion for leave to file stage, very first stage. Rather, the question this court should ask itself is viewing Taliani's claim, if believed, not positively rebutted by the record, does it cast doubt on the judgment? Does it put the evidence in a different light? And could it result in an acquittal? We argue that the answer to those questions is yes. If we look at what would be the first thing we're going to hear about serotonin syndrome, that it's a serious, potentially fatal condition resulting in side effects Taliani was suffering from, including altered consciousness, increased confusion, irritation, and abuse bar causing increased suicide ideation. They're going to hear Dr. Chapman's report and his testimony found that his mental state satisfied the involuntary intoxication statute because the standards were the same. The only difference is the cause. But this court in Robinson also made clear that conflicting evidence doesn't defeat a claim at this stage. And the jury will also hear from Chapman's report that he actually was suffering from side effects of serotonin syndrome consistent with his claim, such as, you know, the report cites such things as he felt increasingly helpless with recurrent suicidal urges, believes his girlfriend agreed with his homicidal suicidal fantasies, extremely anxious and tense, quite confused and losing his mind, did not understand things going on around him, experienced bizarre and unusual sensory experiences and confused thinking. So this is all new information. Also, you know, the state this time around has to prove beyond a reasonable doubt that he was not involuntarily intoxicated. The jury will, of course, receive the instruction this time. And we argue that there's compelling facts here. The jury is going to learn, because this time around, as far as the question of does this present the evidence in a different light, it to hang their head on to see why things changed. Because we learned that Mr. Togliani suffered from depression for about 10 years leading up to this incident. Counsel, I think your time is up. Sorry. Thank you very much, Your Honor. Anyone have any other questions? Thank you. Michael Lance Sabula. Thank you, Your Honor. May it please the Court, Counsel, I'm Assistant Attorney General Michael Sabula on behalf of the people of the state of Illinois. This court should affirm the lower court's judgment denying petitioner leave to file a second successive petition, which I should note would be his fifth collateral attack on his conviction for three reasons. First, petitioner's innocence claim is barred by principles of forfeiture and raised judicata because, as he has admitted, he could have raised this claim in an earlier petition. Second, he has failed to allege a colorable actual innocence claim because he has presented no new evidence. And third, he has failed to raise the probability that it's more likely than not that he would be acquitted if the case were tried today. As to raise judicata in forfeiture, Your Honors, you've just heard petitioner correctly admit that he could have raised this claim in his first successive petition, but he didn't raise this claim at that time. Instead, he used the same evidence he's relying on today, which is allegations about serotonin syndrome, to argue that he was not fit for trial and that his counsel should have requested a fitness hearing, at which time counsel before trial could have presented evidence that petitioner had serotonin syndrome and therefore was unfit for trial. Now, because petitioner admits he could have raised this claim in his first successive petition, he's barred from raising it in a second successive petition. That's what this court has made clear in cases like Bailey, Tenor, Orange, and many others. He can't engage in piecemeal post-conviction litigation. Now, petitioner has said that we should excuse his forfeiture. He says that he really wanted to raise this innocence claim in his first successive petition. However, he says that the lawyer who represented him in that case, the lawyer he hired, I should note, to represent him in that case, a lawyer by the name of Mueller, supposedly refused to raise this innocence claim. But all we have is petitioner's self-serving allegation of that, that he's made at the last second. And that's not enough. Yes. The defendant brought his petition as an actual innocence petition. And he doesn't dispute that he committed the acts resulting in the death of Wolf and severe injury. Can he actually claim actual innocence? Or what is the difference between actual innocence and legal innocence that counsel mentioned? Sure. That's not an issue that's been briefed by the parties. That's an argument that the state could have raised, but we chose not to because, just to be blunt, his claim fails for so many other reasons that I think are not particularly controversial. This is not an issue that was raised in the PLA or that was the basis for the appellate court's decision. However, this court, I think some of the questions got to an issue, which is that many other jurisdictions that have as well as some federal courts have held that claims that you are legally innocent are not sufficient for an actual innocence claim. A legally, an argument that you're legally innocent would be, for example, that I was in trap. Or I know some jurisdictions have held that this type of claim, this involuntary intoxication claim, is a legal defense, so therefore is not supportive of an actual innocence claim. A factually, a factual innocence claim would be, literally, I did not hold the trigger. It was someone else who murdered the victim. So again, that's not an argument that the parties have briefed. I don't know that the state necessarily is asking the court to resolve the case on that ground here, but certainly that's something that other jurisdictions have held, that this legal defense that was raised here is not an actual innocence claim. But as I was mentioning, this claim is forfeited anyway. He's asked us to excuse that forfeiture because Mueller supposedly refused to do so. He relies on the case of Warren from the Appellate Court, but even there the Appellate Court didn't just rely on this self-serving allegation of attorney neglect. Instead, there the Appellate Court went back and looked at the record in the early proceedings, and they saw that there that petitioner had filed a pro se motion to replace his counsel, and specifically claimed that his counsel was not raising the claims he wanted, and he supported that claim of an attorney neglect witness affidavits. Here we have none of that. The record shows that petitioner originally filed his first successive petition pro se, and it did not include an actual innocence claim. He then hired Mueller, who eventually amended the petition. That petition did not include an innocence claim either, based on serotonin syndrome. At that time, petitioner didn't complain about Mueller. He didn't seek to replace him or fire him, which would have been easy to do. Instead, petitioner himself signed that petition knowing exactly what claims it didn't contain and did not contain. After he lost in circuit court, he retained Mueller again to represent him on appeal, and after he lost there, he retained Mueller again to represent him to file a PLA. So altogether, he retained Mueller for almost 14 years, crossed three different courts, had multiple opportunities to replace him, and never did so. So he can't now claim at this last second that Mueller was not representing his interests. As to the merits of his failed to allege a colorable actual innocence claim, as this court knows, the first requirement, and really the bedrock requirement in the innocence claim, is that the petitioner must present, at the very first stage, he must present new evidence that is exculpatory. As this court knows, typically that takes the form of a witness affidavit that would clear the petitioner's name or belief. Here, we don't have any of that. The only thing petitioners presented that wasn't is some very general medical literature. And what that medical literature says is that some people, not all people, but just some people, who take the medication he took might or might not develop serotonin syndrome. And the symptoms of serotonin syndrome can be very mild. It might just be, for example, an upset stomach. But what petitioner has not presented is an affidavit from a doctor which specifically diagnoses him personally with serotonin syndrome, let alone says that the symptoms he personally suffered left him unable to understand and follow the law, which is what would be required for an involuntary intoxication offense. So all petitioner has is speculation. But speculation, obviously, is not enough in post-conviction proceeding. Just as a petitioner can't say, trust me, one day I'll be able to find an eyewitness who can't say, trust me, one day I'll be able to find a doctor who said that I had serotonin syndrome, and the particular symptoms I had left me unable to understand that it was wrong to shoot my girlfriend and shoot her mother. Now, because petitioner has no evidence that he had serotonin syndrome or has not presented the required evidence, frankly, most of the arguments he's presented today in his briefs are just not relevant. In his required brief, and again today, he really tries to focus, I think frankly for the first time, on some kind of suggestion that this is serotonin syndrome, that there was a risk of these medications, that this is some kind of new medical discovery. That's irrelevant if we don't know that he actually had serotonin syndrome. If he hasn't come forward with an affidavit from a doctor diagnosing him in that way, it doesn't really matter when the medical community first learned when this was a possible risk. Even though it's his burden, I would point out, even though it's his burden to establish when this was first discovered, he doesn't do that. He just asks us to take his word for it that this is a recent medical discovery. However, I think it appears to be factually incorrect, that assertion. Parties agree, I believe, that this court may take judicial notice of the PubMed database. That's a database run by the federal government. Courts routinely take judicial notice of the information there, and in that database you will find an article from 1992, which is three years before petitioner's trial, which is entitled, Serotonin Syndrome from Trazodone and Buspirone, which are the generic names for the medication he was taking. So he appears to be factually incorrect on that point. It's also contrary to what he's argued for more than a decade. As we've already discussed, for more than a decade in the first successive petition proceedings, he argued that serotonin syndrome was known and it was discoverable at the time that there was this risk of serotonin syndrome for these particular medications. He faulted his counsel for not raising that issue before trial. After litigating that for a decade, he can't now change his position. He should be stopped or should be forfeited in some way. I would also point out that in his briefs in the appellate court and also his PLA, he did not treat this as a claim based on some kind of new medical discovery. All along, in this case, his argument has been that the evidence is not new, the law is new. That's what he argued on page two of his PLA, and that's why this court granted the petition, I believe. So he can't now, again, change his position on that point. Petitioner has also argued, as this court alluded to, that his claim is new in the sense that this court's decision in Harre supposedly created some new and novel defense when it held that involuntary intoxication can be based on prescription medication side effects. Again, though, that's an irrelevant argument because he's not serotonin syndrome, let alone that the symptoms he had left him unable to follow the law. So since he doesn't have that evidence, it doesn't really matter whether this was some kind of new or novel defense or whether he can show this is retroactive or anything of that nature. It doesn't matter. But I would point out this is not some kind of new or novel defense. In our brief, we cite an Illinois case from 1993, the Smith case, that in that case, which was several years before petitioner's trial, the defendant there presented an involuntary intoxication defense based on the side effects of his medication. We cite other cases. There's no dispute this has been a recognized defense in other jurisdictions for decades. I disagree with a lot of the ways that my opponent has characterized this court's decision in Harre. Harre specifically said that the defense was based on the side effects of prescription medication. It pointed out that any kind of contrary authority was off point because most of it included people who were taking illegal drugs, which obviously is not the same thing as taking prescription medication. And I believe there was one case where someone stole some prescription medication or used it without doctor's guidance or advice, voluntarily. So obviously, those were not on point, and that's the point the court made. Plain language of the statute allowed it. There was no contrary authority. This court did overrule these other cases, but the court was careful to say to the extent they could be read. The court didn't say they could be read, as I think my opponent may have suggested. The court said to the extent they could be read is not allowing this defense there overrule. But the court's clear statement was that the plain language allowed. Now, I should also mention that even if we assume for the sake of argument that this was some kind of newer novel defense, it would not help petitioner in these post-conviction proceedings. We cite a number of cases making this point, all of which come from this court. Opinions like Bailey, Guerrero, Edwards. I'd like to briefly focus on this court's decision in People v. English because I think it establishes the relevant principle. In the English case, the defendant was convicted of felony murder based on an underlying predicate felony of battery. A few years after his conviction became final, this court changed the law of felony murder. In a case called Morgan, this court held for the first time that felony murder cannot be based on an underlying predicate felony that's inherent in the victim's death. In other words, the court held for the first time that felony murder couldn't be based on battery anymore. So English filed a post- conviction petition saying, look, I'm legally innocent. I can't be convicted anymore based on this new change in the law, this new precedent. This court didn't dispute the law had changed, but this court said that that didn't help English. The court pointed out that the defendant in Morgan faced the exact same legal landscape as English did, and at his trial, he argued that the law should be changed. And when he lost, he argued on appeal that the law should be changed. And the court said that if Morgan could do that at his trial and on his direct appeal, even though the law was against him at this time, English could have done so himself in his trial, in his direct appeal. And because he had not done so, he had forfeited the claim and couldn't try to raise it now on post-conviction. Again, we don't allow decennial litigation. And the same is true here. If the defendant in Smith, the defendant in Horry, the other cases, if they could raise an involuntary intoxication defense, try to raise it at trial, try to raise it on the direct appeal, and successfully I should say in Horry's case, there's no reason that this petitioner could have done so. But instead, over 25 years, he's chosen to raise a bunch of different things. And again, I note this is, again, this is his fifth collateral attack. And this principle from English makes sense. The way criminal litigation should work, and the way it's always worked, is that if at the time of your trial, you have a legal theory that you think shows you're innocent, or you have evidence that you think proves you're innocent, you need to present it then at trial. And if for some reason the court, the trial court excludes it, then you can raise that issue on direct appeal. What you can't do is what this petitioner has been doing the last 25 years, which is continually raise different theories for a number of different collateral attacks on his conviction. That's not how criminal litigation should work, and it's not how it's ever worked. Lastly, Your Honors, as my opponent alluded to, the other requirement of a national distance claim is that he must show, he must, excuse me, raise the probability that it's more likely than not he would be acquitted. That's a burden he bears at this stage as well. Not only does petitioner have no evidence that his medication is to blame, or that he actually has serotonin syndrome, the record, I think it's fair to say, positively rebuts such a theory. In fact, it's rebutted by petitioner's own words. Petitioner began taking his That timing is important because it's undisputed that he told police that he made up his mind to kill his girlfriend a month before the shooting. In other words, he told police he made up his mind before he began taking medication. It's also undisputed that he told police that after he began meeting with the doctor who gave him his medication, it didn't change how he felt. He didn't feel any better, he didn't feel any worse. And it's undisputed that he told police he did not feel intoxicated at the time of the shooting. He felt like his normal self. And that's by the testimony of 10 or more eyewitnesses who spoke with petitioner the day of the murders. These were people that knew him for years. Many of them were his friends, including one was a woman he was dating at the time, and he considered him a friend at trial. Some of them spoke to him less than an hour before the shooting. They all said he was acting like his normal self. He did not say or do anything strange, did not seem intoxicated. And three law enforcement officers spoke with him within an hour of the murder. And likewise, they said he seemed like his normal self. They had known him from prior encounters with police. He did not seem intoxicated. So the reality is, is that petitioner's medication is not to blame. He tries to suggest that Dr. Chapman may have diagnosed him with serotonin syndrome. That's not true or accurate. Dr. Chapman is a expert he retained for trial. Dr. Chapman examined him, knew he was on medication, and he placed the blame on petitioner's depression, not his medication. All of the symptoms that petitioner says he has, Dr. Chapman is retained expert attributed to depression, not medication. So again, as the jury has already determined, petitioner is to blame for his actions. He knew what he was doing. He knew it was wrong to murder his girlfriend and to shoot his mother in the head. But he did it anyway. He's not innocent. So unless there are any further questions, we would ask the court to affirm the lower court's judgment. Thank you. Thank you, Mr. Shibula. Mr. Walker? Briefly, Your Honors. So, first of all, we would argue this is not. Well, first of all, we don't think counsel should be going up to matters off the record at this motion for leave the file stage. And based on the record itself, his claim that serotonin syndrome was not known at the time of trial is not positively rebutted. It's supported by his attachments. But we still also maintain that even if known, this was not a viable defense at the time of trial. It was commonly understood to be precluded, and it would be unfair to bar him from presenting evidence of his actual innocence in that situation. We also would point to Boosley v. United States again, where it was allowed for that actual innocence hearing, despite the not being able to show cause. And we would also argue this is not piecemeal litigation, because there's no evidence that he could have discovered the claim any sooner when you look at the record. He claims that serotonin syndrome was not discovered until several years, as a result of these two drugs, to be specific, was not known until several years leading up to the filing of the innocent petition. And of course, Harry and Alberts had been decided in 2006-2008. The very first pleading since then was the 2014 amended success of PC through post-conviction counsel, which we argued should be treated as still be newly discovered because it was through no fault of Mr. Taliani's own that it wasn't raised at that point. But that would have been the first point it could have been raised. We've made our argument as to why that shouldn't prevent him from presenting evidence of his actual innocence. We would also point out that he never expressed unwillingness to rely on the expertise of counsel. And it is a very harsh remedy to say, well, you cannot now present any evidence of your actual innocence under this affirmative defense because, well, you should have gone pro se or you should have had more money to hire counsel. That's not fair. The only reason he moved to substitute counsel previously in that amended 2014, what ended up being the amended 2014 PC, is a complete lack of communication from counsel. He wanted counsel. He wanted to be guided. And he should have that. That shouldn't prevent him from now presenting a claim of his actual innocence per Warren, where it was through no fault of his own it wasn't raised. Now, we would also point out that we argue that this would probably change the results at trial under the Robinson standard. Could it result in an acquittal? Does it present the evidence in a different light? Of course it does. Look at what changed. Before a trial, he was severely depressed before the acts and he was severely depressed after them. Here, now the trial, now the this is what the jury would hear that we find compelling. The jury would hear that prior to seeking help, Mr. Taliani had had fantasies about killing himself and his girlfriend, but he was unable to do it. He conformed his behavior to the requirements of the law. At one point, his girlfriend wakes up, finds him in the bedroom with a shotgun unloaded, crying because he couldn't follow through with his desire to kill her. Now, he seeks help after that. He gets prescribed these two psychotropic medications, and after all that, within two weeks, he's committing these horrible acts. That's involuntary intoxication. The jury will be asked, what changed? The answer is the medication. That is an affirmative defense. That renders him not criminally responsible. As we pointed out, affirmative defenses have been vehicles for actual innocence claims in Illinois through self-defense. There was an entrapment in People v. Montes. This is not a crazy idea to say that this should present an actual innocence claim. Counsel, does People v. English apply to this case, as opposing counsel argues? Thank you for bringing that up, Your Honor. No, English is not an actual innocence case. English doesn't mention actual innocence. Those words don't appear. There's no analysis of the four elements of actual innocence claims anywhere in that case. The dissent wonders why it's there. And ultimately, that's a sustrated forfeiture case. Everything needed to raise that issue in that case was known as soon as he was charged. He was arguing that his aggravated battery should not also be the cause. Aggravated battery in a felony murder cannot coexist. The aggravated battery can't be that predicate felony because there was no separate felonious purpose because that aggravated battery caused the death. And so that was known as soon as he was charged. There was no new evidence presented, no exculpatory evidence presented. That was more of a, I mean, as the dissent characterizes, statutory interpretation. And we would in this case, again, we would point as persuasive argument to Boosley where in that case, the defendant could not show cause for not raising the claim earlier, but he was given a chance to establish his actual innocence because of the importance of that. And so we would stress that this certainly is an actual innocence claim. It is not piecemeal litigation. Based on the record, which we should be sticking to here, it was raised as soon as he could, except for the 2014, which of course we've explained was through no fault of petitioner's And so I guess with that, your honors, unless there's any more questions, we would simply want to reiterate our request for remedy here, which is to find that Mr. Togliani has presented a colorable claim of actual innocence and to remand the cause for second stage proceedings under the act. Thank you, Mr. Walker. Case number 125891, People of the State of Illinois v. Stephen Togliani will be taken under advisement as agenda number four. Thank you, Mr. Walker and Mr. Shabula for your arguments this morning.